UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

CRIMINAL #03-10361-RWZ-03

_____

UNITED STATES

v.

SCOTT FINK
Defendant

_____

**DEFENDANT'S SENTENCING MEMORANDUM**

The defendant Scott Fink files this memorandum to assist the Court in fashioning an appropriate sentence.

**Developments Since Revised Presentence Report Prepared**

The defendant has succeeded in vacating four prior convictions from the Fall River District Court. Those convictions are described in paragraphs 73-76 of the Revised Presentence Report**.** The decision of Judge Nadeau is attached hereto as Exhibit A.

The defendant has also submitted a report prepared by a forensic psychologist, Dr. John Daignault. That report has been submitted to the Court by the Probation Officer.

**Issues for the Court's Consideration**

**I.      Is the defendant a career offender?**

Paragraph 85 of the initial and revised presentence reports contended that the defendant was a career offender in light of the convictions described in paragraphs 71, 74, and 75. The government

did not object to either the initial or revised presentence report. The convictions described in paragraphs 74 and 75 have now been vacated. It was only after the defendant succeeded in vacating those convictions that the government asked the Court for additional time to investigate the offense described in paragraph 72. The government has now submitted documents from the Fall River District Court showing that the defendant was convicted of the offense of assault and battery.

Even if the Court is prepared to relieve the government of its failure to object, it should not consider that offense as a predicate offense for career offender purposes. In Massachusetts, the crime of assault and battery can be committed in a two different ways. <u>Commonwealth v. Burke</u>, 390 Mass. 480 (1983). There are harmful batteries, which would be crimes of violence, and there are offensive batteries, which would not be crimes of violence. <u>Id</u>. Under <u>Shepard v. United States</u>, 125 S. Ct. 1254 (2005), the Court is limited to examining the charging document and the change of plea colloquy to determine whether the particular case is a crime of violence. Here, there is no change of plea colloquy available and the charging document is no help because the complaint tracks the language of Gen. Laws ch. 277 , § 79, which provides that every assault and battery can be charged in the following language, "That A.B. did assault and beat C.D." <u>See</u> a copy of the statute, which is annexed hereto as Exhibit B. In Massachusetts, <u>every</u> complaint in the state district court system, whether it is for a harmful battery or merely an offensive battery, is charged in that language. <u>See</u> Affidavit of Charles W. Rankin, annexed hereto as Exhibit C. Thus, one cannot rely upon the language of the charging document. This fact serves to distinguish this case from the First Circuit's decision in <u>United States v. Mangos</u>, 134 F.3d 460 (1st Cir. 1998)(holding that a complaint in the language of the statute constituted a crime of violence), where the record did not contain evidence of the practice in the state district courts. Thus, the only document which the Court could

conceivably consider under <u>Shepard</u> cannot be considered because it gives no indication of whether this offense was a harmful or an offensive battery.

If the defendant is not a career offender, then his base offense level is 26 if the Court finds that he distributed between 500 and 2,000 grams. After deducting three level for acceptance of responsibility, the total offense level would be 23. If the enhanced penalty provided for a prior felony drug conviction applies (but see the next argument), then the guideline sentence is the same as the mandatory minimum sentence – 10 years.[1]

## II.    Is the defendant eligible for an enhanced penalty under 21 U.S.C. § 851?

The defendant was arrested on October 10, 2002 for <u>simple</u> possession of cocaine, and he pled nolo contendere and was placed on probation with a three year suspended sentence on November 21, 2002. The defendant's car had broken down. A state trooper stopped to render assistance. A record check revealed that there was a warrant for the defendant's arrest for failing to appear in a Rhode Island court for driving with a suspended license. The defendant was arrested and the trooper found an "eight ball" of cocaine (3.5 grams) in the defendant's pocket. The police report is attached as Exhibit D. This is the same quantity of cocaine that the government contends was

---

[1]    The mandatory minimum sentence would be higher than the sentence required by the guidelines because the defendant should be in criminal history category IV, with seven criminal history points, calculated as follows:

| | |
|---|---|
| ¶ 71 | 3 points |
| ¶ 72 | 3 points |
| ¶ 77 | 0 points because the cocaine possession was part of the instant offense. 4A1.2(a)(1) |
| ¶ 78 | 0 points because defendant had no counsel and did not waive right to counsel |
| ¶ 79 | 1 point |
| ¶ 80 | 0 points – marijuana case was part of instant offense. USSG ¶ 4A1.2(a)(1) |
| ¶ 82 | 0 points – probation on ¶ 78 offense does not count because it was uncounseled |
| Total | 7 points |

distributed by Mr. Fink for Mr. Melo.  In Rhode Island, the crime of simple possession of cocaine is a felony.  R.I. Gen. Laws § 21-28-4.01(C)(1)(a).

Based on this offense, the government filed an enhancement in this case against Mr. Fink. See docket entry 83, filed May 2, 2005.  The defendant contends that he is not eligible for this enhancement because the conduct that led to the November 2002 conviction is part of the instant offense, and is thus not a prior conviction.

The indictment in this case charges the defendant and others with conspiring to distribute cocaine "from a time unknown to the Grand Jury, but at least by in or about May 2003, and continuing thereafter until in or about July 2003."  It charges that the conspiracy took place in various cities and towns in Massachusetts and Rhode Island.

The investigation of Mr. Melo commenced in 2001.  FBI Special Agent Joseph Realmuto submitted an affidavit at Fink's detention hearing which states, "Since January 2003, I have been a co-case agent on an investigation of drug trafficking in the South Shore area of Massachusetts that began in early 2001. The targets of the investigation include JOHN MELO ("MELO") and SCOTT FINK ("FINK")."  ¶ 6.[2]  In seeking a Title III wiretap of Melo's telephone in May 2003,  agent Realmuto stated that there has been an investigation of drug trafficking in the South Shore area of Massachusetts that began in early 2001.  "The investigation initially focused on three individuals, [Scott] NICHOLSON, MELO, and James Sardina, Jr., all of whom are career offenders with serious prior drug trafficking convictions."  M.B.D. No. 03-10155, ¶ 13.  Agent Realmuto stated that Melo has been intercepted discussing drug deals on the telephone with Scott Nicholson in the course of

---

[2]     At the detention hearing in this case, agent Realmuto testified that Fink had been working for Melo for "quite some time" before the initiation of the wiretap.  Pages 21-22 of transcript of 1-8-04 hearing.

a wiretap of Nicholson's telephone. ¶¶ 31-45. In his affidavit, agent Realmuto stated that several

confidential informants had told law enforcement officers that Melo had been selling cocaine for

years. According to agent Realmuto:

> CI-3 told Trooper Catanese that he/she has never personally purchased drugs from
> MELO but has known MELO for several years and knows someone who regularly
> purchases cocaine from him. . . . CI-3 told Trooper Catanese that MELO sells
> cocaine and prescription drugs in the Bristol County area. CI-3 said that MELO's
> customers order drugs from him by placing calls to the Melo Cell Phone, which is
> used by MELO and others who work for him in the drug business. CI-3 said that
> calls to the Melo Cell Phone are sometimes call-forwarded to the phone of a worker
> who is responsible for delivering drugs on MELO's behalf at that time.

Realmuto affidavit, ¶¶ 24-25. Agent Realmuto described surveillance of Melo as he conducted his

drug business between 2001 and 2003. ¶¶ 27-30. Agent Realmuto also described the results of an

analysis of pen registers and trap and trace devices for the period December 5, 2001 through May

14, 2003. According to agent Realmuto, Melo was in contact with a dozen known drug traffickers

during that two year period.

Thus, factually, it is clear that Fink's earlier conviction for simple possession of cocaine is

related to the instant offense – he possessed the same drug, in the same quantity in the same

geographic area, using the same call-forwarding technique described in the wiretap affidavit.

Fink worked for Melo for a time in his drug distribution business in late 2002. Paragraph 88

of the presentence report indicates that Fink and Melo were identified as persons who went to the

home of David Brown in Fall River on January 20, 2003 to collect a drug debt owed to Melo.

Whether a prior conviction is related or unrelated for purposes of the enhanced penalties

provided by sections 851 and 841(b)(1)(A) involves a factual inquiry that is subject to review on

appeal for clear error. United States v. Hansley, 54 F.3d 709, 717 (11th Cir. 1995).

-5-

Section 851 applies only when the federal offense occurs "after a prior conviction for a felony drug offense has become final." Section 841 contains no definition of the terms "prior" and "final" convictions. The First Circuit has not addressed these issues. Those circuits which have addressed the issue have agreed that the prior conviction need not be entirely separate from the conduct for which the defendant is currently being sentenced.

In determining whether a prior offense counts for section 851 purposes, the Sixth and Eighth Circuits focus on whether "the convictions constitute[] separate criminal episodes for enhancement purposes under § 841(b)." United States v. Johnson. 220 F.3d 857, 862 (8th Cir. 2000); See United States v. Hughes, 924 F.2d 1354, 1361 (6th Cir. 1991)(requiring "'a separate criminal episode, an offense that was distinct in time' or an episode 'that is part of a series, but [which] forms a separate unit within the whole.'" The Second, Seventh, and Eleventh Circuits focus on the "degree of criminal activity that occurs after a defendant's conviction for drug-related activity is final rather than when the conspiracy began." United States v. Martino, 294 F.3d 346, 350 (2nd Cir. 2002); United States v. Garcia, 32 F.3d 1017, 1020 (7th Cir. 1994); United States v. Hansley, 54 F.3d 717 (11th Cir. 1995).

Certainly, under the former test, the government's proof of the "prior" conviction falls short because Fink's conduct is exactly the same in both instances – working as a runner, distributing 8 balls, for Melo. The conduct is related, it is part and parcel of the instant offense, and thus it cannot be said that the defendant had a "prior" conviction. For this reason, the defendant should not be deemed subject to the 851 enhanced sentence.

The effect of finding that the defendant is not subject to the 851 enhancement would be twofold. First, if the defendant is a career offender, the base offense level would be 34 instead of

37 because the statutory maximum would be reduced from life to 40 years. See USSG 4B1.1(b). After deducting three levels for acceptance of responsibility, the total offense level would be 31, and the guideline range would be 188 to 235 months (instead of 262 to 327 months). Second, the mandatory minimum would be reduced from ten years to five years (assuming that the Court finds the defendant responsible for more than 500 grams).[3]


III.    **Should the Court Adjust the Defendant's sentence down by six months because of the time he served on the Rhode Island marijuana possession conviction?**

The defendant served six months in prison in Rhode Island (between July 9, 2003 and January 5, 2004) for simple possession of marijuana. That offense is described in paragraph 80 of the presentence report. His arrest on that offense terminated his involvement in the instant conspiracy. The remaining defendants in this conspiracy were arrested on July 22, 2003. After completing the Rhode Island sentence, Fink was taken into federal custody and brought to federal court to face these charges. The Bureau of Prisons will not credit the defendant with this time spent in custody since it was served on the marijuana case. The defendant contends that he should receive such an adjustment under USSG 5G1.3 because it is part of the instant offence. For instance, paragraph 27 of the PSR reports that the defendant discussed trading marijuana for cocaine on June 13, 2003. Under 5G1.3, the proper way to credit this time would be to decide what sentence should be imposed on the federal offense, and then reduce the sentence by six months to give the defendant credit for the time he served on the related case.

---

[3]      If the defendant is not subject to an 851 notice, the term of supervised release is four years.

**IV.    Should the Court impose a sentence outside the advisory guidelines?**

The defendant contends that the Court should vary the sentence from that suggested by the advisory guidelines.  There are several factors that should influence the Court's consideration:

**A.    Disparity among defendants.**

The other defendants in this case have received the following sentences:

**John Melo**, for whom the defendant worked as a runner, received a mandatory minimum sentence of 20 years, based on a prior drug <u>distribution</u> offense which under section 851 doubled his mandatory minimum sentence from 10 years (for between 5 and 15 kilograms) to 20 years.

**Gregory Warren**, Melo's supplier, received a mandatory minimum sentence of 10 years, based on a finding of 2 to 3.5 kilograms of cocaine, and a prior conviction for possession of a controlled substance in Rhode Island.

**Kevin Briggs**, the co-defendant whose role in the conspiracy most closely resembled that of Fink, received a sentence of 18 months.  The Court determined that his offense level was 21 (26 for over 500 grams of cocaine, less three levels for acceptance and two levels for safety valve) for a guideline sentence range of 37 to 46 months.  The Court imposed a sentence below the GSR because of the nature and circumstances of the offense, the need for deterrence, and the desire to avoid unwarranted disparity.

**Carla Paiva** received a sentence of 1 year and 1 day.  The Court determined that the offense level was 19 (26 for over 500 grams of cocaine, less three for acceptance, two for safety valve, and two for minor role) for a GSR of 30-37 months.    The Court imposed a sentence below the GSR because of a provision in the plea agreement not to oppose a below guideline sentence, the nature and circumstances of the offense, the need for deterrence, and the desire to avoid unwarranted

disparity.

**Tanya Pinheiro** also received a sentence of 1 year and 1 day. She was found responsible for a larger quantity of cocaine, but received a minor role adjustment and a 5K1.1 motion.

Whatever may be said of Mr. Fink, he should certainly receive a sentence closer to the sentences imposed on the other runners – Briggs and Paiva – than on the king pins – Melo, and his supplier Warren.

### B.    Nature and circumstances of offense.

According to the presentence report, Mr. Fink worked as a runner for Melo from the beginning of the wiretap on May 28, 2003 until his arrest on June 13. He was released on June 17, and worked until his arrest on July 9. This was a total of 38 days. According to the presentence report, Fink distributed just over 500 grams of cocaine, usually one eight ball – 3.5 grams – at a time.

### C.    The "perfect storm" of the defendant's prior record

According to the government, the defendant is subject to an enhancement under section 851 because he has a prior felony conviction for a drug offense – simple possession of one eight ball of cocaine in Rhode Island. That has the effect of doubling the mandatory minimum from five years to ten years and it has the effect (if the defendant is a career offender) of increasing his guideline range from 188-235 months to 262-327 months. Such an extraordinary increase in sanctions is not warranted by the conviction for simple possession. The defendant has made arguments about why the enhancement does not apply. But if the Court rejects those arguments, the Court should vary the sentence from the greatly enhanced sentencing range because this is not what Congress had in mind. Congress had in mind punishing repeat drug distributors – not people who had a prior possessory conviction. The mere fortuity that Rhode Island treats simple possession as a felony, while

Massachusetts does not, should not have such a draconian consequence.[4]

Similarly, if the Court finds that the defendant is a career offender, boosting his offense level from 23 to either 34 or 31 (depending on whether the 851 notice is legitimate), the Court should consider a variance from the guideline range given the nature of the predicates. To be sure, the 1990 assault to murder conviction is a serious one. However, the offense in paragraph 72 involved a minor domestic relations assault.

### D.     The defendant's psychological problems

As reported by Dr. Daignault, Mr. Fink is an individual with a very sad background. His recollection of his childhood is a lot of "yelling" and being punished frequently. He was "regularly beaten." He was in special education classes and did not do well, even in those classes. He has no contact with his family, other than with one sister. He had multiple suicide attempts during his incarceration between 1990 and 1996, and reported having conversations with a deceased friend. He has significant neuropsychological impairments. Notwithstanding these multiple problems, Mr. Fink has the potential to lead a normal life. He successfully adjusted to life in the community when he worked for an individual in Massachusetts, Utah, and Nevada. Dr. Daignault recommends that Mr. Fink receive individual therapy and have a psychopharmacological evaluation. He also recommends that he live in a community other than Fall River, Massachusetts.

### V.     Is the defendant responsible for distributing over 500 grams of cocaine?

The defendant believes that the most accurate way to calculate his drug quantity is to identify

---

[4]     Under Mass. Gen. Laws ch. 94C, § 34, simple possession of cocaine is punishable by no more than one year in jail.

particular sales in which he engaged.  Using the method proposed in the presentence report – by guessing at how many times the defendant "re-upped" with Melo is speculative -- since it is not shown that each of the supposed occasions when Fink discussed meeting Melo was actually an occasion when they met and Fink was re-supplied.  Simply because the two met does not mean that he was re-supplied.  If one reviews the government's narrative of intercepted calls, the number of eights balls sold by Fink identified by the government is 123 eight balls.  That translates into 430.5 grams at 3.5 grams per eight ball. Even on the government's calculation that the Melo eight balls were usually (although not always) 4 grams per eight ball, that yields 492 grams.  Finally, there is no proof that the ounce transaction actually occurred.  Fink also objects to including 720 grams of cocaine that was supplied to Briggs.  Simply because Briggs and Fink knew that the other was distributing cocaine for Melo does not mean that the entire quantity was jointly undertaken activity, sufficient to qualify as relevant conduct.

If the Court finds that Fink distributed less than 500 grams, then his sentencing would be as follows: There would be no mandatory minimum, even if the 851 notice were proper.  If Fink is a career offender and he is subject to 851, then his offense level would be 34, less three for acceptance (yielding a GSR of 188-235).  If the 851 is not proper, then his offense level would be 32 less three levels for acceptance (providing a GSR of 151-188). If he is not a career offender, then his offense level would be 24 less three for acceptance (providing a GSR at CHC IV of 57-71 months).

## VI.    Objection to preserve issue for appellate review

The defendant contends that it is error to use the offense statutory maximum to select the offense level for career offender purposes.  Here, the government contends that the offense statutory

maximum is life, because the conspiracy involved over 5 kilograms of cocaine. The defendant

contends that the Court should select the offense statutory maximum using the quantity of drugs that

he is responsible for. The defendant recognizes that there is contrary authority in the First Circuit,

which the Court is required to follow, and hopes to convince a higher Court that the error should be

corrected.

Respectfully submitted,

**SCOTT FINK**

By his attorney,

/s/ Charles W. Rankin

Charles W. Rankin, BBO #411780
Rankin & Sultan
151 Merrimac St., 2nd floor
Boston, MA 02114-4717
(617) 720-0011

-12-

Exhibit A

## Commonwealth of Massachusetts

Bristol, ss

Fall River Division
Docket #       9932CR5043
               9932CR6131
               9932CR6726
               9932CR6889

Commonwealth

vs.

Scott Fink

## Memorandum of Decision

The defendant offered a guilty plea on the above-numbered complaints in this court on December 3, 1999. He also admitted to a violation of probation (9932CR0563) at that hearing. In short, the defendant's cases were combined ("wrapped-up") for a two and one-half (2 ½) year committed sentence. The judge who imposed the sentence is now retired. The tape recording of the hearing is no longer available.

At the hearing on the Defendant's Motion to Withdraw Guilty Plea, Mr. Fink testified that he accepted an offer to plead guilty in exchange for sentences that would run concurrent with each other. He stated there was no plea colloquy with the court and that he was not advised of his rights. An acceptance of the defendant's testimony would necessitate the conclusion that the plea hearing was constitutionally infirm.

The Commonwealth offered no testimony to rebut that of Mr. Fink. Instead, the Commonwealth places substantial reliance upon the presumption of regularity articulated in Commonwealth v. Lopez, 426 Mass. 657 (1998) and Commonwealth v. Grant, 426 Mass 667 (1998). Given that the defendant faces a sentencing enhancement in the Federal Court, his representations should be greeted with caution. His substantial criminal history and the favorable

disposition in the case under review are also worthy of consideration.

Unfortunately, this court concludes that there was no adequate colloquy with these pleas. The defendant's version of the context in which the dispositions arose is plausible. Significantly - and unlike the complaint for which the defendant had been on probation - none of the above-numbered files contains a "Tender of Plea or Admission Waiver of Rights form. The use of this form has been standard practice in the District Court since the abolition of the de novo trial system (See Distr/Mun. Cts. Rules, rule 4 (c))

The burden of proof is upon the Commonwealth to demonstrate that an adequate colloquy was conducted by the court with the defendant. There is no affidavit from the sentencing judge. Given his current association with the Bristol District Attorney, this omission is telling. The state of the evidence compels a finding in favor of the defendant.

The motions of the defendant are Allowed. These complaints shall be restored to the trial list.

So Ordered.

Gilbert J. Nadeau, Jr., First Justice

Date:_1 2.9.05_.



Page 1

M.G.L.A. 277 § 79

▷
Massachusetts General Laws Annotated Currentness
    Part IV. Crimes, Punishments and Proceedings in Criminal Cases
        Title II. Proceedings in Criminal Cases
            Chapter 277. Indictments and Proceedings Before Trial (Refs & Annos)
                Arrest, Arraignment and Other Proceedings

+++ CURRENT VERSION +++

VIEW ALL VERSIONS

→**§ 79. Application of annexed forms; schedule**

The provisions of this chapter, and the forms hereto annexed, shall apply as well to complaints as to indictments, and such forms shall be sufficient in cases to which they are applicable. In other cases, forms as nearly like the forms hereto annexed as the nature of the cases and the provisions of law will allow may be used; but any other form of indictment or complaint authorized by law may be used.

SCHEDULE OF FORMS OF PLEADINGS.

CAPTION AND COMMENCEMENT OF INDICTMENT.

COMMONWEALTH OF MASSACHUSETTS.

(Suffolk,) to wit:

At the Superior Court holden at (Boston,) within and for the County of (Suffolk,) for the transaction of criminal business, on the day of in the year of our Lord one thousand, etc.

The jurors for the said Commonwealth on their oath present

CAPTION AND COMMENCEMENT OF COMPLAINT.

<(To a Police, District or Municipal Court.)>

COMMONWEALTH OF MASSACHUSETTS.

(Suffolk,) to wit:

To the court of holden at for the transaction of criminal business, within the County of , A. B. of in behalf of the Commonwealth of Massachusetts on the day of in the year , on oath complains that

*(To a Trial Justice.)*

To A. B., a Trial Justice in and for the County of and Commonwealth of Massachusetts, C. D. of *(etc.*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 2

M.G.L.A. 277 § 79

*as in form above).*

*(To a Justice of the Peace commissioned to Issue Warrants.)*

To A. B., Justice of the Peace in and for the County of and Commonwealth of Massachusetts, designated and commissioned to issue warrants in criminal cases, C. D. of *(etc. as in form above).*

&lt;(If the statute requires a particular person to make complaint, this should be alleged.)&gt;

*Abduction.* (Under Chap. 272, Secs. 1, 2.)--(1) That A.B. did fraudulently and deceitfully entice (and take away) one C.D., an unmarried person under the age of sixteen years, from the house of the father (*or* guardian, etc., as the case may be), without the consent of the said father (*or* guardian, etc., as the case may be), under whose care and custody said C.D. was living, for the purpose of effecting a clandestine marriage of said C.D. without the consent of said father (*or* guardian, etc., as the case may be).

(2) That A.B. did fraudulently and deceitfully entice (and take away) C.D. from his house (or, if a minor, from his father's or guardian's house; or if elsewhere, state it as the case may be), for the unlawful purpose of prostitution (or for the purpose of unlawful sexual intercourse).

*Abortion.* (Under Chap. 272, Sec. 19.)--(1) That A.B., with intent to procure the miscarriage of C.D., did unlawfully administer to her (*or* advise, *or* prescribe for her, *or* cause to be taken by her) a certain drug (*or* medicine or other noxious thing, as the case may be).

*If the woman dies, add* "and in consequence thereof said C.D. died".

(2) That A.B., with intent to procure the miscarriage of C.D., did unlawfully use a certain instrument upon the body of said C.D., and in consequence thereof said C.D. died.

(3) That A.B., with intent to procure the miscarriage of C.D., did unlawfully do certain things (*naming them* ) to (*or* upon the body of) said C.D.

*Accessory before the fact.* (Under Chap. 274, Sec. 2.)--*Charge principal felony and proceed*: That A.B., before the said felony was committed, did incite, procure, aid, counsel, hire or command the said (principal) the said felony to do and commit.

*Accessory after the fact.* (Under Chap. 274, Sec. 4.)--*Charge principal felony and proceed*: That A.B. afterwards, well knowing the said C.D. to have committed the felony aforesaid, did harbor, (conceal, maintain,) or assist said C.D., with intent that said C.D. should avoid or escape (detention, arrest,) trial, or punishment.

*Adultery.* (Under Chap. 272, Sec. 14.)--(1) That A.B., a married person, did commit adultery with C.D., a person not his spouse.

(2) That A.B., an unmarried person, did commit adultery with C.D., a married person.

*Affray.*--That A.B. and C.D. did make an affray.

*Aggravated rape.* (Under Chap. 265, Sec. 22(a).)--That A.B. did assault C.D., with intent to commit aggravated rape; and did commit aggravated rape upon said C.D.

*Alcoholic Beverages.* (Under Chap. 138, Sec. 2.)--That A.C. did expose and keep for sale alcoholic beverages, as defined in section one of chapter one hundred and thirty-eight, with intent unlawfully to sell the same.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

M.G.L.A. 277 § 79

*Alcoholic Beverages--Sale.* (Under Chap. 138, Sec. 2.)--That A.B. unlawfully did sell alcoholic beverages, as defined in section one of chapter one hundred and thirty-eight, to C.C.

*Alcoholic Beverages--Nuisance.* (Under Chap. 139, Sec. 15.)--That A.B., during the three months next before the finding of this indictment, without legal authority, did keep and maintain a certain tenement in said (Boston), by him used for the illegal sale and illegal keeping for sale of alcoholic beverages, as defined in section one of chapter one hundred and thirty-eight, to the common nuisance of all the people.

*Armed with dangerous weapon when arrested.* (Under Chap. 269, Sec. 9. [FN1])--(1) That A.B., while being lawfully arrested on a sufficient warrant on a criminal charge, was armed with a dangerous weapon, to wit, a slung shot (*or other dangerous weapon, as the case may be*).

(2) That A.B., while committing the crime of (*here state crime*), was lawfully arrested by C.D., sheriff of said county, and when so arrested was armed with, and had on his person, a certain dangerous weapon (a slung shot, etc., as the case may be).

*Arson.* (Under Chap. 266, Secs. 1, 2, 4. [FN2])--(1) That A.B. wilfully and maliciously did burn the dwelling house of C.D. in in said county.

(2) That A.B. wilfully and maliciously did burn a building adjoining the dwelling house of C.D. in in said county.

(3) That A.B. wilfully and maliciously did set fire to a building in by the burning whereof the dwelling house of C.D. was burned.

(4) That A.B. wilfully and maliciously, in the night time, did burn

(a) A meeting house (*or church, town house, etc.*) in in said county, erected for public use.

(b) A banking house (*or warehouse, etc.*) of C.D. in in said county, of the value, with the property therein, of one thousand dollars and not the property of (the defendant).

(c) A barn (*or stable or shop or office*) of C.D., in in said county, the same being there within the curtilage of the dwelling house of said C.D.

(5) That A.B. wilfully and maliciously did burn a building, by the burning whereof [ (a), (b), or (c) ] was burned in the night time.

(6) That A.B. wilfully and maliciously did burn a banking house (*or other structure mentioned in the statute, as the case may be*) of C.D., in in said county.

 *Assault and battery.*--That A.B. did assault and beat C.D. 

*Assault to maim, etc.* (Under Chap. 265, Sec. 15.)--That A.B. did assault C.D., with the malicious intent to maim ( *or disfigure*) said C.D. by cutting out his tongue (*or other facts required by the nature of the case*).

*Assault to murder.* (Under Chap. 265, Sec. 15.)--That A.B. did assault C.D., with intent to murder him.

*Assault to Rape.* (Under Chap. 265, Sec. 24.)--(1) That A.B. did assault C.D., with intent to commit rape.

(2) That A.B. did assault C.D., a child under the age of sixteen years, with intent unlawfully and carnally to know

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**EXHIBIT C**

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

CRIMINAL #03-10361-RWZ-03

_____

UNITED STATES

v.

SCOTT FINK
Defendant

_____

**AFFIDAVIT OF CHARLES W. RANKIN**

Being duly sworn, Charles W. Rankin states:

1.   I am a member of the bar of this Court and the Supreme Judicial Court.  I have extensive

experience defending criminal cases in the courts of the Commonwealth of

Massachusetts.  I am familiar with the practice of the Commonwealth's district courts,

and how complaints are prepared and worded in the Commonwealth.

2.   In my experience, the clerk's offices in the state district courts invariably use the language

set forth in Gen. Laws ch. 277, § 79 when issuing complaints.  Thus, in every assault and

battery case I have ever handled, the complaint has read that the defendant "did assault

and beat" the victim.

3.   I have spoken to other defense counsel and prosecutors who are experienced in the state

court system.  I am informed that this is the universal practice throughout the

Commonwealth.

4.      I am aware that the district court clerk's offices have access to a computer program that uses the language of ch. 277, § 79 when issuing complaints.  That computer program has been in use for approximately ten years.

5.      In my opinion, every complaint for assault and battery, for at least the last ten years, whether of the harmful battery type or offensive battery type, will contain the same language – that the defendant "did assault and beat" the victim.

Signed under the penalty of perjury on December 19, 2005.

/s/ Charles W. Rankin

_____

Charles W. Rankin



Rhode Island State Police Portsmouth
**Inventory Tracking Report**

Date: 10/10/2002
Page: 1

Property Number: <u>02RIK1-84-PR</u>

Case Number: <u>02RIK1-263-AR</u>

Owner: <u>FINK, SCOTT W</u>
<u>35 ISLAND AVE</u>
<u>PORTSMOUTH, RI 02871</u>
Tel: <u>401-826-1117</u>
Dte/Time: <u>10/10/2002 1540</u>

Property Description: <u>Cocaine</u>
Type of Loss: <u>Evidence (Not Nibrs Reportable)</u>
Measure: <u>GM</u>
Quantity: <u>3.500</u>
Estimated Value: <u>150.00</u>

| <u>Status</u> | <u>Officer</u> | <u>Date</u> | <u>Time</u> | <u>Reason</u> |
|---|---|---|---|---|
| Released | HEMINGWAY, SCOTT A | 10/10/2002 | 1939 | RECEIVED PROPERTY AND STO |
| | | Stored In Mailbox At K-1 | | |

Exhibit D

6