UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | CRIMINAL NO: 03-10361-RWZ |
| v. | ) | |
| | ) | |
| **SCOTT FINK** | ) | |
| | ) | |

**GOVERNMENT'S REPLY TO**
**DEFENDANT SCOTT FINK'S SENTENCING MEMORANDUM**

The United States of America, by and through its undersigned counsel, respectfully submits this reply to defendant Scott Fink's sentencing memorandum.

I.  **Fink is a career offender even if the phrase "assault and beat" is considered "boilerplate."**

Fink's two grounds for arguing that this Court should ignore an unbroken 13 year-old line of precedent regarding the significance of the phrase "assault and beat" in Massachusetts charging documents are flawed. First, Fink claims, in essence, that no defendant has ever before pointed out to the First Circuit that "assault and beat" is a boilerplate phrase or that M.G.L. ch. 277, sec. 79 provides that assault and battery "may" be charged using that phrase. In United States v. Harris, 964 F.2d 1234, 1237 (1st Cir. 1992), however, the First Circuit acknowledged those facts and still held that the phrase "assault and beat" categorically identifies a violent or potentially violent assault. The government, moreover, based on government

counsel's own experience, disputes the testimony of Fink's attorney that the crime of assault and battery in the Commonwealth is invariably charged using the language "did assault and beat."

Second, Fink argues, also incorrectly, that his prior assault conviction cannot be deemed a crime of violence absent a transcript of the plea colloquy. The First Circuit effectively considered and rejected that very argument in Harris, see 964 F.2d at 1236, and it has reaffirmed many times since then that "'[w]hen the state criminal statute involves different types of offenses, some arguably violent and some not, we look first to the charging document to see which type of offense is involved.'" United States v. Estevez, 419 F.3d 77, 82 (1st Cir. 2005) (quoting United States v. Mangos, 134 F.3d 460, 464 (1st Cir. 1998). The Supreme Court likewise rejected the same argument in Taylor v. United States, 495 U.S. 575 (1990), where it approved recourse to charging documents in cases involving statutes that embrace both violent and non-violent conduct despite the fact that "in cases where the defendant pleaded guilty, there often is no record of the underlying facts." Id. at 601; accord Shepard v. United States, 125 S.Ct. 1254, 1259-60 (2005).

In sum, binding First Circuit and Supreme Court case law precludes this Court from accepting either of Fink's arguments.

II. Fink's October 10, 2002, conviction is a "prior conviction" within the meaning of 21 U.S.C. § 841(b)(1).

Fink argues, again incorrectly, that his November 21, 2002, Rhode Island conviction for possession of cocaine is not a "prior" conviction for purposes of 21 U.S.C. § 841(b)(1) because the possession was "part and parcel" of the instant offense. Fink's argument fails for two reasons. First, there is no evidence in the record that the possession was *in fact* part and parcel of the instant offense. The government began intercepting John Melo's phone calls on May 28, 2003. That is the first day on which the government became aware that Fink was a "runner" for Melo. Although the government believed (based mainly on confidential informant information) that Melo had been distributing cocaine using "runners" for a lengthy period of time (including as far back as the date on which Fink was arrested for possessing cocaine), it had no evidence, and still has no evidence, that Fink was a "runner" that far back. Since Fink himself has offered no evidence that he was running drugs for Melo on October 10, 2002 (i.e. the date of his possession arrest), the record contains no evidence that he was. (Were Fink to offer such evidence, moreover, a likely result would be a vast increase in the quantity of cocaine for which he must be held accountable, since it would show that he was selling cocaine for

3

a period more than six times the length of the period for which he has been held accountable based solely on the wiretap evidence.)

To the extent Fink relies on paragraph 88 of the PSR as evidence that he worked for Melo in Melo's drug business in late 2002, the reliance is misplaced. Paragraph 88 notes that Melo and Fink were identified by David Brown as persons who broke into the Brown's home in Fall River on January 20, 2003, to collect a drug debt owed to Melo. But Fink's Rhode Island arrest for possession of cocaine occurred on October 10, 2002 -- more than *three months* before the January 20, 2003, home invasion -- meaning that the home invasion proves nothing about whether Fink was a "runner" for Melo in October 2002. Melo, moreover, was intercepted several times telling others that Fink committed the home invasion with another person (i.e. not with Melo himself) for the purpose of collecting a drug debt owed only to Fink, not Melo. The government, based on other evidence, believes Melo's claim, and has so informed the Assistant District Attorney prosecuting the home invasion case.

Second, the Second Circuit has observed that "[a]lthough § 841 contains no definitions of the terms 'prior' and 'final' convictions, circuit courts addressing this question have nonetheless unanimously concluded that the conduct upon which a

prior conviction rests need not be entirely separate from the conduct underlying the conviction for which the defendant is being sentenced." United States v. Martino, 294 F.3d 346, 350 (2nd Cir. 2002) (internal quotation marks and citations omitted). The Second Circuit wrote in Martino:

> We agree with the Fourth, Seventh, and Eleventh Circuits.  The dispositive question for purposes of enhancing a mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(B) for a defendant's prior drug-related final conviction is, in our view, whether or not the defendant ceased criminal activity after the prior conviction.  A defendant's sentence must therefore be enhanced if there is 'continued involvement' in criminality subsequent to the prior conviction.  This view fits [best] . . , we think, with the intent of Congress to punish recidivism. . . .  Focusing on a defendant's failure to refrain from criminal activity after his or her prior conviction, when determining if a past conviction is distinct from the conviction at hand, reflects and furthers the goal of targeting recidivists because it relies on specific evidence that a defendant has not accepted or abided by the significance of the censure inherent in his or her previous criminal conviction.

Id. at 350-51 (internal quotation marks and citations omitted). Fink's November 21, 2002, conviction clearly meets the Second, Fourth, Seventh, and Eleventh Circuit's definition of a "prior" conviction -- even assuming the underlying conduct was "part and parcel" of the conspiracy of which Fink was convicted -- because Fink's participation in the conspiracy continued for at least seven months after the earlier conviction.  It even meets the somewhat stricter test adopted by the Sixth and Eighth Circuits.

See <u>United States</u> v. <u>Hughes</u>, 924 F.2d 1354, 1361 (6th Cir. 1991) (requiring "a separate criminal episode, an offense that was distinct in time" or an episode "that is part of a series, but [which] forms a separate unit within the whole"); <u>United States</u> v. <u>Johnston</u>, 220 F.3d 857, 862 (8th Cir. 2000) (same); see also <u>United States</u> v. <u>VanDoren</u>, 182 F.3d 1077, 1083 (9th Cir. 1999) (holding that a prior, final conviction may be one that is "part of the same conspiracy" for which the defendant has been convicted in the instant case).

III.    Fink should not receive credit for the approximately six months he served on a Rhode Island marijuana possession charge.

There is no reason in law or logic that Fink's sentence on a Rhode Island marijuana charge should result in a lower sentence in this case. Police stopped Fink's car in Rhode Island on July 10, 2003, and found marijuana in his car. He was charged with possession of marijuana (second offense) and with a violation of his probation in a simple assault case. He resolved both matters by pleading nolo contendere to the marijuana charge and received a sentence of two years, six months committed, 18 months suspended/probation.

Contrary to Fink's claim, there is nothing in the record to suggest that Fink's possession of marijuana was "part of the instant offense." Although it is true that Fink once agreed to trade a customer some cocaine for marijuana, there is nothing in

6

the record to indicate that the marijuana was other than for personal use. And there certainly is nothing in the record to indicate that Fink's possession of marijuana in Rhode Island on July 10, 2003, was in furtherance of the conspiracy to distribute cocaine of which he has been convicted.

In short, Section 5G1.3 of the sentencing guidelines offers no support for a downward adjustment in Fink's sentence based on his Rhode Island marijuana conviction.

Because the remainder of Fink's arguments do not necessitate detailed legal analysis or case citations, the government, with the Court's permission, will respond to them orally at the sentencing hearing.

> Respectfully submitted,
>
> MICHAEL J. SULLIVAN
> United States Attorney
>
> By: /s/ William Weinreb
>     WILLIAM D. WEINREB
>     Assistant U.S. Attorney