# United States Court of Appeals
# For the First Circuit

No. 06-1313
No. 06-1346

UNITED STATES OF AMERICA,

Appellee, Cross-Appellant,

v.

SCOTT FINK,

Defendant, Appellant, Cross-Appellee.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before

Torruella and Lynch, Circuit Judges,
and Fusté,* District Judge.

Charles W. Rankin, with whom Michelle Menken and Rankin & Sultan were on brief for appellant.
William D. Weinreb, Assistant United States Attorney, with whom Michael J. Sullivan, United States Attorney, was on brief for appellee.

August 16, 2007

---

* Of the District of Puerto Rico, sitting by designation.

**FUSTE, District Judge.** The issues in this case surround the sentencing of Scott Fink for conspiracy to distribute cocaine under 21 U.S.C. § 846 (1999 & Supp. 2007). Fink's participation in the crime was revealed when the government wiretapped a co-conspirator's phone beginning May 28, 2003. The wiretaps evidenced Fink's involvement from that date until July 13, 2003, when Fink was arrested for violating probation in an unrelated case. On December 3, 2003, a federal grand jury returned a one-count indictment charging Fink and five others with violation of § 846.[1] Fink pleaded guilty without a plea agreement before Judge Rya W. Zobel on May 25, 2005. At Fink's December 19, 2005, sentencing hearing, the district court ruled that Fink was subject to a ten-year statutory mandatory minimum under 21 U.S.C. § 841(b)(1)(B)(1999 & Supp. 2007), but that he was not eligible for career offender treatment under the United States Sentencing Guidelines (USSG). The district court sentenced Fink to ten years in prison and ten years of supervised release.

Fink appeals his sentence. He argues that § 841(b)(1)(B) is unconstitutional and that, alternatively, the facts of his case render it inapplicable to him. The government cross appeals the

---

[1]A superseding indictment that also charged Fink with one count under § 841 for possession with intent to distribute and distribution of cocaine is irrelevant to the instant appeal. It was later dropped at the government's request when Fink agreed to plead guilty to the one count against him in the original indictment.

sentence, alleging error in the district court's refusal to treat Fink as a career offender under the USSG. We reject Fink's arguments that the ten-year statutory minimum in § 841(b)(1)(B) does not apply. We are persuaded, however, by the government's position that it should have been granted a continuance on Fink's career offender status and, therefore, vacate Fink's sentence and remand this case for resentencing consistent with this opinion.

## I.

## **Background**

Fink's presentence report (PSR), which was first issued on August 9, 2005, and later updated on November 9, 2005, stated that Fink should be held accountable at sentencing for 1,988 grams of cocaine. It also catalogued his multiple prior convictions for breaking and entering, larceny, car theft, assault and battery with a dangerous weapon, assault and battery with intent to murder, stay-away and abuse prevention order violations, resisting arrest, possession of cocaine, possession of marijuana, and probation violations.

## A.  **The First Contested PSR Recommendation**

The PSR recommended that Fink be treated as a "career offender" under Chapter 4 of the Sentencing Guidelines, an approach that would result in a higher advisory guideline sentencing range (GSR) for Fink. Section 4B1.1(a) of the Sentencing Guidelines sets forth preconditions that must be present if a defendant is to be

-3-

considered a career offender.  U.S.S.G. § 4B1.1(a).  One of these preconditions requires that the defendant have at least two prior felony convictions for either a crime-of-violence or a controlled-substance offense.  U.S.S.G. § 4B1.1(a)(3).  In its discussion of Fink's career offender status, the PSR specifically identified three prior crime-of-violence convictions from Fink's criminal record that could serve as career offender predicates.  The first was a 1990 Bristol County conviction for assault and battery with intent to murder, and the other two were December 1999 Fall River convictions for resisting arrest and assault and battery with a dangerous weapon ("the December 1999 convictions").

On December 7, 2005, Fink notified the district court that the two December 1999 convictions could not be career offender predicates because a state court judge - Gilbert J. Nadeau - had since vacated those convictions.

Some additional background is required to understand the complicated facts surrounding this aspect of the parties' sentencing dispute.  Fink pleaded guilty to assault and battery in Fall River District Court in Massachusetts on February 2, 1999 ("the February 1999 conviction"), and was sentenced to suspended jail time and probation for that offense on April 28, 1999.  Later that year, Fink was charged with four more crimes in Fall River District Court, including resisting arrest, assault and battery with a dangerous weapon, violating a stay-away order, and violating an abuse-

-4-

prevention order. These four charges were combined, or "wrapped-up" for disposition purposes. Fink pleaded guilty to them all at once, and was sentenced to serve two and one-half years in prison in satisfaction of all the charges ("the four wrapped-up convictions").

All five convictions - the February 1999 conviction and the four wrapped-up convictions - appeared in Fink's PSR in a section on his general criminal history. As already noted, two of these convictions also made a second appearance in the PSR's section on Fink's career offender status, where they were specifically flagged, along with the 1990 Bristol County conviction, as crime-of-violence predicates.

After pleading guilty in the present case, Fink moved to withdraw his state court guilty pleas in the four wrapped-up state convictions that raised the specter of career offender status for the present § 846 violation, claiming that he had been the victim of a constitutionally-infirm plea colloquy. The state court judge who originally accepted Fink's guilty pleas in the four wrapped-up convictions in 1999 had since retired, so the motion was assigned to Fall River District Judge Gilbert J. Nadeau. Judge Nadeau granted Fink's motion in a December 7, 2005, order. Significantly, the order was captioned only with the four wrapped-up convictions' case numbers. Judge Nadeau's order observed that at the same time Fink had pleaded guilty to the four wrapped-up convictions, he had also admitted that they constituted a violation of his probation in

-5-

the February 1999 case. Judge Nadeau stated that he granted Fink's motion to withdraw his guilty pleas in the four wrapped-up cases because none of their files contained the "Tender of Plea or Admission Waiver of Rights form" that was standard practice in the Fall River District Court. Finally, Judge Nadeau's order observed that Fink's February 1999 conviction file did contain the important plea colloquy form.

Fink then pointed out to the district court in the instant prosecution that only one of the crime-of-violence convictions specifically flagged in the PSR as a qualifying career offender predicate – Fink's 1990 Bristol County conviction – remained on his record, and that his record, accordingly, lacked the two convictions that would be necessary to designate him a career offender. One day later, on December 8, 2005, the district court convened a sentencing hearing for Fink, and the government responded to the vacated wrapped-up convictions by noting that the February 1999 conviction listed in Fink's PSR's criminal history qualified as a crime of violence that the district court could weigh in its deliberations. Given the still-evolving developments in the parties' career offender arguments, the district court prudently decided to postpone Fink's sentencing hearing until later in the month.

On December 15, 2005, the government filed a pleading titled "Memorandum Regarding Scott Fink's Criminal History," arguing that the February 1999 conviction qualified as a crime of violence

-6-

predicate under § 4B1.1 of the Sentencing Guidelines. The government appended the case's Complaint, Criminal Docket Sheet, and Tender of Plea for the district court's consideration.

The district court convened another sentencing hearing for Fink on December 19, 2005. At the hearing, Fink argued that the February 1999 docket sheet contained an entry dated December 8, 2005, reading "D's motion to withdraw guilty plea – allowed [Nadeau]." Fink argued that the February 1999 conviction had, according to its own docket, been vacated and could not, as the government alleged, serve as a career offender predicate.

The government responded that the docket entry had nothing to do with the continuing force of the February 1999 conviction. In the government's view, the docket entry reflected Judge Nadeau's observation that the vacatur of Fink's wrapped-up convictions could have implications for his February 1999 case insofar as those convictions constituted parole violations for the February 1999 conviction. The government pointed out that this docket entry came only one day after Judge Nadeau's order of vacation. The government also asserted that Fink never moved to have his guilty plea withdrawn in the February 1999 case and offered a copy of the state court criminal file to sustain its point.

Fink did not deny that he had never moved to withdraw his guilty plea in the February 1999 case. Instead, he urged that the words "motion to withdraw guilty plea - allowed" appearing on the

February 1999 case's docket be taken at face value without any reference to any of the other information submitted to the court by the government. The district court concluded that this approach was mandated by the Supreme Court in Shepard v. United States, 544 U.S. 13 (2005).

The district court refused to consider the offered copy of the state court criminal file and accepted Fink's argument that Shepard prohibited it from considering evidence outside of the docket entry's plain language to interpret its meaning. The government requested a continuance so that it could obtain direct clarification from the Massachusetts state court whether the February 1999 conviction remained in force, which the district court denied. Working only from the docket entry's plain language, the district court found the February 1999 conviction had been vacated, and refused to qualify it as a career offender predicate.

**B.      The Second Contested PSR Recommendation**

The PSR also recommended that the district court sentence Fink to a statutory mandatory minimum of ten years to a maximum of life, pursuant to 21 U.S.C. § 841(b)(1)(B), the statute governing the sentencing of Fink's conviction under 21 U.S.C. § 846. While § 841(b)(1)'s standard mandatory minimum is five years, this figure doubles when a defendant has a prior felony drug offense.[2]

_____

[2]The relevant portions of 21 U.S.C. § 841(b)(1)(B) read as follows:

-8-

The PSR identified Fink as having committed a prior felony drug offense in 2002, when he was convicted of cocaine possession in Rhode Island.[3]

Fink did not contest the existence of the 2002 conviction, but argued that the underlying conduct had been in furtherance of, and therefore could not be considered as having occurred prior to, the drug conspiracy for which he was about to be sentenced. Fink reminded the court that Congress' intent in passing § 841(b)(1)(B)'s sentence enhancement was to prevent criminal recidivism and argued that he was not a recidivist; he argued, in

> In the case of a violation of subsection (a) of this section involving – . . . (ii) 500 grams or more of a mixture or substance containing a detectable amount of [cocaine] . . . such person shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years . . . If any person commits such violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 10 years and not more than life imprisonment . . . any sentence imposed under this subparagraph shall, in the absence of such a prior conviction, include a term of supervised release of at least 4 years in addition to such term of imprisonment and shall, if there was such a prior conviction, include a term of supervised release of at least 8 years in addition to such term of imprisonment . . . .

[3]The government filed the statutorily-required information on May 2, 2005, notifying its intention to rely on the 2002 Rhode Island conviction for possession of cocaine to seek an enhanced sentence under § 841(b)(1).

-9-

essence, that the district court could not truthfully say that he had gone back to selling drugs for the simple reason that he had never stopped. Fink also argued that the district court could not constitutionally invoke the 2002 conviction to enhance his drug conspiracy sentence because the cocaine possession offense would not be a felony and trigger the statute if it had occurred in Massachusetts instead of Rhode Island. According to Fink, allowing such geographic mischance to inflict a greater sentence upon him than upon a similarly-situated defendant would violate his constitutional right to equal protection.

The district court rejected Fink's arguments, and ruled that the 2002 conviction constituted a prior felony drug offense for the purposes of the § 841(b)(1)(B) sentencing enhancement.

C.          **The District Court's Calculation of Fink's Sentence**

Having determined that the February 1999 conviction could not be treated as a prior crime-of-violence conviction that would serve as a career offender predicate, the district court determined Fink's GSR using base calculations. The district court concluded that Fink's total offense level was 23[4] and his criminal history category was IV, yielding a GSR of seventy to eighty-seven months.

---

[4]Fink was being held responsible for 1,988 grams of the cocaine, which started his base offense level at 26 under USSG § 2D1.1(c)(7) (applying to crimes involving "[a]t least 500 G but less than 2KG of Cocaine"). Fink then received a downward adjustment of three points for having accepted responsibility for the crime under USSG § 3E1.1(a) and (b).

-10-

Having also ruled that the 2002 cocaine possession conviction was a prior felony drug offense for the purposes of enhancing Fink's sentence under § 841(b)(1)(B), the statutory mandatory minimum of ten years governed and the district court sentenced Fink to ten years in prison and ten years of supervised release.

Fink appeals the district court's ruling regarding § 841(b)(1)(B), and also, for the first time on appeal, challenges the order that he serve ten years of supervised release. The government cross appeals the district court's ruling on Fink's career offender status.

## II.

## Discussion

**A.       Section 841(b)(1)(B) Sentence Enhancement**

**1.      Incorrect Standard of Proof Challenge**

Fink argues that the district court improperly failed to hold the government to its burden of proving that the 2002 conviction was distinct from his 21 U.S.C. § 846 violation under the reasonable doubt standard.  He claims that the government was obligated to indict and put the question to a jury, which he alleges is required by Apprendi v. New Jersey, 530 U.S. 466 (2000).  He also avers that the government had to convince the district court of the 2002 conviction's distinctness beyond a reasonable doubt in an evidentiary hearing, which he alleges is required by 21 U.S.C. § 851 (1999 & Supp. 2007).

-11-

It is clear that Fink's Apprendi argument has no merit. In United States v. Coplin, this court ruled that the Supreme Court's decision in Almendarez-Torres v. United States, 523 U.S. 224 (1998), "made clear that a sentence enhancement may be grounded on prior criminal convictions not . . . proven to a jury."  463 F.3d 96, 104 (1st Cir. 2006).   Fink's argument that the government failed to prove the 2002 conviction's distinctness to the district court beyond a reasonable doubt in a § 851 evidentiary hearing is similarly unavailing.   The multitude of fragmented sentencing hearings held in this case by a learned and patient district judge who carefully looked at all angles to formulate a reasonable sentence fully complied with the § 851 evidentiary hearing requirement.   To argue that the sentencing hearings were not evidentiary hearings disregards what happens daily in federal district courts throughout the nation, where district judges hold hearings in the sentencing context to find facts and decide the applicable law.  Here, we are satisfied that such required hearing took place, irrespective of the label placed to describe it.

## 2. **Equal Protection Challenge**

Fink appeals the district court's use of the 2002 cocaine possession conviction to increase his sentence, alleging that this ruling violated his right to equal protection under the Fifth Amendment of the United States Constitution.  Fink complains that 21 U.S.C. § 841(b)(1)(B) imposes a much higher jail term upon him

-12-

for having been convicted and punished in Rhode Island - a state that considers possession of an eight ball of cocaine to be a felony (therefore triggering § 841 sentence enhancement) - than it would upon a similarly-situated criminal defendant arrested in Massachusetts - a state that does not designate possession of that quantity of cocaine as a felony. It is, therefore, Fink's position that this aspect of federal sentencing law has worked to arbitrarily discriminate against him simply because he had the misfortune to earn his criminal history in Rhode Island and not Massachusetts.

Fink argues that the § 841(b)(1)(B) enhancement is subject to a strict scrutiny analysis under his equal protection challenge because the statute implicates his physical liberty. We disagree. This court has subjected a similar sentence enhancement statute - the Armed Career Criminal Act's (ACCA) 18 U.S.C. § 924(e)(1) - to rational-basis review in United States v. Bregnard. 951 F.2d 457, 461 (1st Cir. 1991). Section 924(e)(1), which governs sentencing in the context of select firearms possession offenses, outlines a sentence enhancement for convicted persons who bear a history of three previous convictions for violent felonies, serious drug offenses, or a combination thereof. § 924(e)(1). As applied, § 924(e)(1), like § 841(b)(1)(B), also achieves some disparate results among similarly-situated criminal defendants depending on the states in which they accrued their criminal histories.

-13-

In Bregnard, a defendant argued that he was denied equal protection of the law when § 924(e)(1) was used to enhance his sentence due to crimes on his record that qualified as enhancement predicates according to criminal definitions in the state in which they occurred, but that did not qualify as such in all states. Bregnard, 951 F.2d at 461. We found that "[t]he mere fact that application of the § 924(e) enhancement is ultimately predicated on the definition of crimes that may vary from state to state is insufficient to conclude that § 924(e) violates the equal protection of the law." Id. We concluded that "[i]t was entirely rational" for Congress to structure the sentence-enhancement statute as it did, and we dismissed the equal protection challenge, as we do here. Id. (quoting United States v. Houston, 547 F.2d 104, 107 (9th Cir. 1976)).

### 3. **Recidivism Challenge**

Fink also argues that the district court erred when it treated the 2002 conviction as a prior felony drug offense for the purposes of imposing a § 841(b)(1)(B) sentence enhancement against him. According to Fink, the cocaine possession that gave rise to that conviction was conduct in furtherance of, and therefore indistinct from, the cocaine distribution conspiracy that is presently at issue. Fink claims that enhancing his sentence for the conspiracy under § 841(b)(1)(B) therefore ignores the statute's aim of curbing criminal recidivism. According to Fink, he is not a

-14-

recidivist. Fink contends that his 2002 cocaine possession and 2005 conspiracy conviction are both part and parcel of one epic crime that he has remained unwaveringly dedicated to over the course of many years. We apply a clear error standard to the factual determinations of the district court. Gonzalez-Velez, 466 F.3d at 40.

Fink's claim that the offense underlying his 2002 conviction was in furtherance of conduct that later also gave rise to his § 846 violation is an argument that this court has heard, and rejected, on similar facts before. In United States v. Martinez-Medina, a defendant convicted of a drug conspiracy charge appealed the district court's enhancement of the sentence by reference to § 841(b)(1)(B) and two prior felony drug convictions on the defendant's record. 279 F.3d 105 (1st Cir. 2002). We repudiated the defendant's argument that the two prior felony drug offenses could not serve to enhance the sentence because they were part and parcel of the drug conspiracy, observing that the prior felony drug offenses had occurred over the course of several months and involved different drugs. Id. at 123; see also United States v. De Jesus Mateo, 373 F.3d 70 (1st Cir. 2004) (observing that the defendant's prior convictions were for separate drug transactions occurring several months apart and quoting Martinez-Medina to deny defendant's challenge to the sentence enhancement he received under 21 U.S.C. § 841(b)(1)(A)). In the instant case, Fink's 2002 cocaine

possession conviction also occurred prior to, and involved different
drugs from, the numerous offenses underlying the § 846 conspiracy
conviction, and we therefore conclude that the two convictions are
separate and distinct episodes under Martinez-Medina. The district
court therefore did not err in ruling that the 2002 conviction is
a prior felony drug offense for the purposes of enhancing Fink's
sentence under § 841(b)(1)(B).

## B.        **Career Offender Status**

The government cross appeals the district court's refusal
to grant it a continuance so that it could directly inquire with the
Massachusetts state court as to the meaning of the contested docket
entry and the February 1999 conviction's actual status. In denying
the government's request for a continuance, the district court
accepted Fink's position that the contested docket entry vacated his
February 1999 conviction and ruled that he was not a career offender
for sentencing purposes. The relevance of the government's cross
appeal to Fink's ultimate sentence is that Fink's PSR recommends
calculating his GSR at 262 to 327 months if he were found to be a
career offender. Although the guidelines are advisory, 18 U.S.C.
§ 3553(a)(4) still requires courts to properly calculate and
consider a convicted defendant's advisory GSR prior to sentencing.
See United States v. Jimenez-Beltre, 440 F.3d 514, 518 (1st Cir.
2006)(discussing the role of the guidelines for sentences imposed
post-Booker).

-16-

In refusing to grant the requested continuance, the district court said that a continuance had already been granted before, when Fink got the four wrapped-up convictions vacated on the eve of his December 8, 2005, sentencing hearing. At the time, the government's career offender arguments had been thrown into disarray and the district court granted the continuance so that the government could have the opportunity to review its strategy in light of the new developments. In rejecting a continuance on December 19, 2005, however, the district court stated that "at some point we need to stop clarifying" and proceed to sentencing.

A trial court has wide discretion to grant or deny a request for continuance, United States v. Saccoccia, 58 F.3d 754, 770 (1st Cir. 1995), and so in the past we have held that "[o]nly an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay" would amount to an abuse of that discretion. United States v. Brand, 80 F.3d 560, 564 (1st Cir. 1996) (quoting Morris v. Slappy, 461 U.S. 1, 11-12 (1983)) (internal quotation marks omitted). We find such an abuse of discretion in the present case. Fink invoked the contested docket entry to challenge the validity of the February 1999 conviction in the middle of the December 19, 2005, sentencing hearing when the government had inadequate time to fully pursue all avenues of response. We find the government's request for time to clarify the veracity of Fink's argument justifiable given those circumstances,

-17-

especially since it informed the district court precisely what steps it would take if the continuance were granted, i.e., that it would consult directly with the Massachusetts state court for clarification of the issue. While the district court's interest in concluding what had already become a protracted sentencing process is understandable, we conclude that this did not outweigh the government's interest in having Fink's sentence calculated using the most accurate criminal history information available. Accordingly, we reverse the district court's denial of the government's request for a continuance, and remand this case so that a third sentencing hearing may be convened. Before the third sentencing hearing takes place, the government can follow through on its announced plan to clarify the meaning of the contested docket entry by directly inquiring with the Massachusetts state court. As an aside, we note that even if the government were to prove the continuing force of the February 1999 conviction, the district court of course retains Booker discretion to craft a guideline or non-guideline sentence after considering the relevant 18 U.S.C. § 3553(a) sentencing factors.

If the government's inquiry with the Massachusetts state court as to the February 1999 conviction reveals that it remains in force, Fink alternatively argues that the underlying assault and battery offense is not a qualifying crime of violence for the purposes of career offender designation. Notwithstanding Fink's

brief argument in this regard, it is clear that the February 1999 assault and battery conviction was for a crime of violence, see United States v. Estevez, 419 F.3d 77, 82 (1st Cir. 2005); United States v. Mangos, 134 F.3d 460, 463-64 (1st Cir. 1998), and we decline Fink's invitation for this panel to overrule binding circuit law.    The only real question surrounding the February 1999 conviction is whether it remains on the books.

Lastly, we would like to mention another appellate argument made by the government, which is that the district court's refusal to consider any materials beyond the contested docket entry in determining whether Fink's February 1999 conviction remained in force constitutes a misapplication of Shepard v. United States, 544 U.S. 13 (2005), where the Supreme Court limited a sentencing court's consideration of the nature of a defendant's prior conviction to the four corners of the convicting court's records.    The district court believed that the materials offered by the government in support of its interpretation of the contested docket entry - Judge Nadeau's order, for instance - were precisely the sort of records considered off-limits by Shepard.    For the time being, we find it unnecessary to reach the government's Shepard argument because presumably the parties' dispute over the docket entry will be resolved on the remand we have already ordered.

**C.**          **Ten Years' Supervised Release**

Finally, we observe that Fink disagrees with the ten years of supervised release ordered by the district court for which he alleges he had no advance warning. He argues that § 841(b)(1)(B) sets the minimum term of supervisory release for "at least 8 years," that the ten years imposed therefore constitutes an upward departure, and that a court must notice a defendant that it is considering an upward departure in sentencing before ordering it. Because we are remanding, the issue is hypothetical. Fink may argue this point on remand.

## III.

### Conclusion

For the foregoing reasons, we affirm the district court's ruling that Fink's 2002 conviction is an adequate 21 U.S.C. § 841(b)(1)(B) sentence enhancement predicate, but reverse the district court's denial of a continuance so that the government could clarify the continuing force of the February 1999 conviction for consideration in the context of an analysis of Fink's career offender status. Case remanded for further proceedings consistent with this decision.

**Affirmed in part and reversed and remanded in part.**